1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRYAN RODGERS,

                    Plaintiff,

         v.

WELLS FARGO BANK NA,

                    Defendant.

Case No. 3:25-cv-05383

ORDER GRANTING MOTION TO
DISMISS AND DENYING MOTION FOR
LEAVE TO AMEND AND MOTION TO
STAY

## I.    INTRODUCTION

This case arises out of the securitization of pro se Plaintiff Bryan Rodgers' mortgage loan and the subsequent assignment of the promissory note to Fannie Mae in 2020. On June 8, 2020, Mr. Rodgers refinanced an existing mortgage loan with Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), and executed a promissory note in the amount of $208,000. The loan was then securitized under Pool Trustee number 0000BP6450.

On May 6, 2025, Mr. Rodgers sued Wells Fargo in this Court. Dkt. 1. He filed an amended complaint on May 19, 2025. Dkt. 7. Mr. Rodgers alleges that Wells Fargo did not disclose the securitization of his loan and failed to adequately respond to several requests for financial transaction records and chain-of-custody documents. Based on these allegations,

Mr. Rodgers asserts the following claims against Wells Fargo: (1) fraudulent concealment of material facts relating to the promissory note; (2) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.§ 2605(e); (3) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638; and (4) violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.020. *Id.* at 17–21. Mr. Rodgers also seeks equitable accounting and declaratory relief to determine the parties' rights and obligations regarding the enforceability of the note. *Id.* at 21–23.

Wells Fargo moved to dismiss the amended complaint and filed a motion to stay discovery pending the Court's ruling on its motion to dismiss. Dkt. 29; Dkt. 39. Mr. Rodgers, in response, filed a motion for leave to file a second amended complaint. Dkt. 33. For the reasons explained below, the Court GRANTS the motion to dismiss (Dkt. 29) and DENIES the motion to stay (Dkt. 39) as moot. The motion for leave to file a second amended complaint is DENIED and Mr. Rodgers' claims are DISMISSED with prejudice (Dkt. 33).

## II.    BACKGROUND

On June 8, 2020, Mr. Rodgers refinanced an existing loan with Wells Fargo and executed a promissory note in the amount of $208,000, which was secured by a Deed of Trust. Dkt. 7 ¶ 10; *see* Dkt. 7-2 at 26.[1] From June 2020 to May 2025, Mr. Rodgers made regular monthly payments totaling $57,264. Dkt. 7 ¶ 11.

---

[1]Mr. Rodgers attached several exhibits in support of his amended complaint. Since "[c]ertain written instruments attached to pleadings may be considered part of the pleading," the Court considers these documents without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)); *see Wilhelm v. Rotman*, 680 F.3d 1113, 1116 n.1 (9th Cir. 2012) ("When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment.") (citation omitted).

In October 2023, Mr. Rodgers sent Wells Fargo a written payoff inquiry and Wells Fargo responded by providing a copy of the promissory note. *Id.* ¶ 12. The note stated: "the Lender may transfer this Note. The Lender or anyone who takes this note by transfer and who is entitled to receive payment under this Note is called the '*Note Holder*.'" Dkt. 7-2 at 26 (emphasis in original). Mr. Rodgers alleges that this note contained a previously undisclosed, non-recourse special endorsement stating "WITHOUT RECOURSE, PAY TO THE ORDER OF WELLS FARGO BANK, N.A.," and was signed by Jackie C. Mueller, Senior Vice President. Dkt. 7 ¶ 12; *see* Dkt. 7-2 at 29. He asserts that Wells Fargo "provided no explanation of the endorsement's purpose or legal effect and has not produced documentation reflecting assignment, delivery, or negotiation to Fannie Mae[.]" Dkt. 7 ¶ 12. Mr. Rodgers further alleges that the "lack of disclosure . . . raises material questions regarding consideration and enforceability" of the note. *Id.* ¶ 14.

On February 20, 2025, Mr. Rodgers sent a letter to Wells Fargo's loan servicing dispute department that included a number of inquiries: (1) a complete payment history, including application to principal, interest, fees, and escrow; (2) clarification of balance adjustments, offsets, or servicing anomalies; (3) identification of the loan's funding source and related transactions; and (4) the note's ownership and securitization history, including endorsements and chain of title. *Id.* ¶ 16; *see* Dkt. 7-2 at 2–3.

In a letter dated March 13, 2025, Wells Fargo responded that "the loan was originated with Wells Fargo Bank, N.A. on June 8, 2020, and the servicing of the loan has remained with Wells Fargo." Dkt. 7-2 at 41. And though "Wells Fargo Bank, N.A. is the servicer for the loan," it explained that the loan is "owned by Fannie Mae, under Pool Trustee number 0000BP6450." *Id.* Wells Fargo also enclosed a copy of the promissory note, Deed of Trust, and payment history. *See id.* at 43–45. With respect to the request for payment history breakdown, Wells Fargo

enclosed "the payment history, which provides a breakdown of the account activity," and noted that the loan balance of $163,467.99 "reflected in the activity statement is up to date and valid" and "has not been satisfied." *Id.* at 41. The letter also explained that Wells Fargo could not provide any further information because the remaining requests were too broad. *Id.* It asked that Mr. Rodgers provide more specific details about what he was seeking and that it would review the request again. *Id.*

Wells Fargo sent a second letter that day informing Mr. Rodgers that it was working on responding to another inquiry he had sent and would provide a response no later than April 10, 2025. *Id.* at 47.

Two days later, on March 15, 2025, Mr. Rodgers sent another letter to Wells Fargo "demanding full accounting and discharge" of his mortgage loan. *Id.* at 8. He wrote, "[t]he Deed of Trust assumes Wells Fargo funded the loan, but third-party funding negates this—voiding it unless evidenced otherwise. Technical defaults occurred without notice . . . suggesting third-party compensation discharged the debt." *Id.* at 9. Mr. Rodgers demanded that Defendant provide (1) proof of funding ("Explain the June 8, v. June 14, 2020 discrepancy"; "Disclose funding source—Wells Fargo capital, warehouse line, Federal Reserve, or MBS investors"; "Provide: Wire transfer Records and Funding Ledgers—disbursement to escrow/seller"; "Provide: Warehouse Credit Line Records and MBS Trust Funding Ledgers."), (2) securitization details ("Provide: Pooling and Servicing Agreement"; "Provide: MBS Prospectus"), (3) Transaction Chain and Accounting ("List entities holding/servicing my Note"; "Provide: Assignments of Mortgage/Notes—all transfers"; "Provide: Servicing Agreements—current terms"; "Disclose payments/credit enhancements applied to my balance"; "Provide: Accounting Ledger—payments, offsets, obligations."). *Id.* at 9–10.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The same day, Mr. Rodgers sent a letter to Fannie Mae demanding the pooling and servicing agreement ("PSA"), an accounting ledger, and a status of his note. *Id.* at 59–60. He also sent a Freedom of Information Act ("FOIA") request to the Federal Housing Finance Agency ("FHFA") on March 17, 2025, requesting the PSA, an accounting ledger, and any SEC filings or public disclosures of his Pool Trustee number 0000BP6450, reflecting the valuation and funding of the note. *Id.* at 62–63.

On April 10, 2025, Wells Fargo responded to Mr. Rodger's second letter noting it had "received a similar request from [him] and sent a prior response." *Id.* at 49. Wells Fargo included a copy of its prior response and addressed additional concerns raised in Mr. Rodger's letter, which were his request to discharge the account and to explain the discrepancy with the loan's origination date. *Id.* Wells Fargo denied the request to discharge the account, noting it had "determined the account was handled properly and no corrections are needed as no error has occurred." *Id.* Wells Fargo added that the reason why the date of origination and date of agreement is different was because June 8, 2020 was the date the note was executed and June 14, 2020 was the date the lender released the funds to the title or escrow company. *Id.* at 49–50.

One week later, Mr. Rodgers sent a letter to Wells Fargo Home Mortgage requesting for an immediate 180-day mortgage forbearance under the CARES Act due to "ongoing financial hardship related to post-pandemic economic strain, persistent inflation, and increased costs of living." *Id.* at 16. Mr. Rodgers sent another letter to Wells Fargo issuing a "Notice of Fault and Opportunity to Cure" regarding Defendant's failure to "lawfully and fully respond" to his requests dated February 20, 2025 and March 15, 2025. *Id.* at 18. On April 18, 2025, Mr. Rodgers sent a supplemental "Notice of Fault and Opportunity to Cure," stating that Defendant's failure to address the issues violated RESPA, TILA, and RCW 19.86.020. *Id.* at 24. Mr. Rodgers also

noted in the letter that he had filed a complaint with the Consumer Finance Protection Bureau ("CFPB") regarding Wells Fargo's lack of response to his requests. *Id.*; *see also id.* at 36.

Based on these facts, Mr. Rodgers asserts four causes of action. First, he claims that Wells Fargo "concealed material facts regarding the Note's endorsement, custodial status, funding source, and legal transfers, which were essential to determining its enforceability and the identity of any party with authority to enforce it." Dkt. 7 ¶ 29. Second, he asserts that Wells Fargo's "omissions and pattern of evasive communication constitute a failure to comply with RESPA's requirements under 12 U.S.C. § 2605(e) and Regulation X (12 C.F.R. §1024.36(d)), which obligate loan servicers to conduct reasonable investigations and respond to borrower inquiries with appropriate supporting documentation." *Id.* ¶ 39. Third, Mr. Rodgers asserts that Wells Fargo's "failure to disclose the absence of a valid, documented funding transaction or legal transfer of the Note constitutes a material omission under TILA." *Id.* ¶ 45.

Fourth, he alleges that Wells Fargo violated the Washington CPA by engaging in the following deceptive practices: "(a) providing inconsistent or incomplete Note copies in response to formal Qualified Written Requests[;]" "(b) failing to disclose the existence and function of a self-directed, non-recourse endorsement"; "(c) misrepresenting or omitting the Note's funding and custodial status despite repeated and specific inquiries"; and (d) "presenting itself as lender at origination while later disclaiming legal ownership or providing contradictory information about enforcement rights." *Id.* ¶ 50.

Finally, Mr. Rodgers "seeks an equitable accounting to determine: (a) whether [Wells Fargo] funded the loan or acted as an intermediary; (b) whether the Note was ever lawfully negotiated or transferred; (c) whether Fannie Mae acquired any enforceable interest under commercial law; and (d) whether [his] payments have discharged or partially satisfied the alleged obligation." *Id.* ¶ 59. Mr. Rodgers also seeks declaratory relief to determine "the legal

rights and obligations of the parties as to the enforceability of the Note, the existence of any lawful Holder in Due Course, and the authority of any party to accept payment, report interest income, or initiate collection." *Id.* ¶ 60.

Wells Fargo moved to dismiss for lack of standing and failure to state a claim. Dkt. 29. Mr. Rodgers responded, Dkt. 35, and Wells Fargo replied, Dkt. 37. The motion is fully briefed and ripe for consideration.

## III.    LEGAL STANDARD

### A.    Standing

Article III of the U.S. Constitution limits the Court's jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. For a case or controversy to exist, the party bringing the case must have standing. *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021). The "irreducible constitutional minimum" of Article III standing requires the plaintiff to show the following three elements: "(1) [The plaintiff] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). As the party invoking the Court's jurisdiction, the plaintiff "bears the burden of establishing these elements." *Id.*

Injury in fact is the "[f]irst and foremost" of the three elements. *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A concrete injury is one that is "real, and not abstract." *Spokeo*, 578 U.S. at 340 (internal quotation marks omitted). "An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "A 'particularized injury' is one that 'affect[s] the plaintiff in a

personal and individual way.'" *Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 411 (9th Cir. 2019) (quoting *Spokeo*, 578 U.S. at 339).

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr.*, 768 F.3d at 945, but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## IV.    DISCUSSION

**A.    Mr. Rodgers has not shown injury in fact as to his fraudulent concealment, CPA, and TILA claims and fails to state a claim.**

Mr. Rodgers lacks standing for his fraudulent concealment, CPA, and TILA claims because he cannot show "an invasion of a legally protected interest." *Spokeo*, 578 U.S. at 338. As the Washington Court of Appeals held in *Deutsche Bank v. Slotke*, a borrower lacks standing to challenge violations of a securitization contract because they are "not a party to or intended third-party beneficiary of that agreement." *Deutsche Bank Nat. Tr. Co. v. Slotke*, 192 Wn. App. 166, 177, 367 P.3d 600 (2016). As that court explained, "the securitization of a loan merely creates a separate contract distinct from the plaintiff's debt obligations under the note." *Id.* at n.39 (citing *In re Nordeen*, 495 B.R. 468, 479 (B.A.P. 9th Cir. 2013)). Mr. Rodger's loan contract with Wells Fargo is "distinct and separate from any securities transaction in the 'secondary market' encompassing assignment" by and between Wells Fargo and Fannie Mae. *In re Nordeen*, 495 B.R. at 479–80. The two agreements—(1) Mr. Rodger's agreement with Wells Fargo and (2) Wells Fargo and Fannie Mae's alleged securitization of that agreement—are separate contracts. *See id*.

Under federal common law as well as Washington state law, "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) (citation omitted); *see also Gibson v. PNC Bank Nat'l Ass'n*, 673 F. App'x 634, 636 (9th Cir. 2016) (barring the plaintiff from bringing a claim based on violations of a pooling and servicing agreement ("PSA") to which he was not a party) (citation omitted); *Hummel v. Northwest Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 806–07 (W.D. Wash. 2016) ("[T]he majority of Ninth Circuit courts have held that plaintiffs lack

standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA.") (citation modified).

Mr. Rodgers was not a party to or an intended third-party beneficiary of the PSA between Wells Fargo and Fannie Mae. The amended complaint specifically alleges that Mr. Rodgers did not participate in the securitization contract. *See* Dkt. 7 ¶ 13 ("Plaintiff . . . was not made aware of Defendant's claim that Fannie Mae held ownership of the Note until March 15, 2025."); *see also id.* ¶ 18 ("Defendant has not produced documentation of any legal negotiation, endorsement, or assignment of the Note, and the custodial chain remains unsubstantiated."). Thus, to the extent that his fraudulent concealment, CPA, and TILA claims arise from the securitization of his mortgage loan, they are barred for lack of standing. *See Slotke*, 192 Wn. App. at 177; *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship*, 671 F.3d at 1033.

Mr. Rodgers maintains he has "standing and *legally protected interest* as the Note's maker . . ., has pled *actual*, *concrete and particularized* injuries: $57,264 in 66 payments, $200 in costs, $1,950 in lost time, and emotional distress [and] . . . these are cognizable harms that flow *directly from Defendant's conduct* and are *redressable by a court's favorable judicial decision*." Dkt. 35 at 4 (emphasis in original); *see* Dkt. 7 ¶¶ 4, 34. These alleged injuries, however, arise out of Mr. Rodgers' theory that his loan was discharged at the origination stage, and he has since made these payments "under protest." *See* Dkt. 7 ¶ 11. But without plausible allegations that the note was rendered unenforceable, and the loan discharged, Mr. Rodgers cannot assert that payments made to keep his account current constitute an injury. *See Young v. Quality Loan Serv. Corp.*, No. C14-1713RSL, 2015 WL 12559901, at *1 (W.D. Wash. July 7, 2015) (citing cases) ("To the extent plaintiff intends to argue that the securitization of his mortgage nullified the underlying debt obligation, that argument has been routinely rejected in this district."). The Court now addresses each claim.

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR LEAVE TO AMEND AND MOTION TO STAY - 10

*1.    Fraudulent Concealment Claim*

Mr. Rodgers' fraudulent concealment claim is based on the allegation that Wells Fargo failed to disclose its transfer of the promissory note to Fannie Mae. *See* Dkt. 7 ¶ 30 ("At the time the Note was executed, Defendant failed to disclose the existence of, or intention to create, a self-directed, non-recourse endorsement . . . which facilitated the Note's use as pledged collateral for Federal Reserve advances without evidencing a legal transfer to Fannie Mae[.]").

Wells Fargo argues that because Mr. Rodgers is not a party to the securitization agreement with Fannie Mae, he lacks standing to challenge the "alleged concealment of 'material facts regarding the Note's endorsement, custodial status, funding source, and legal transfers[.]'" Dkt. 29 at 9 (quoting Dkt. 7 ¶ 29).

Mr. Rodgers contends that he is not challenging the securitization itself but rather the material misrepresentation of the undisclosed non-recourse endorsement. Dkt. 35 at 5. The Court disagrees. The amended complaint is clear that the "material facts" Wells Fargo is accused of concealing is the note's "legal transfer." Dkt. 7 ¶ 29. The non-recourse endorsement is the mechanism that Mr. Rodgers alleges *allowed* Wells Fargo to assign the note to Fannie Mae without his knowledge. *See* Dkt. 7 ¶ 30. Thus, by asserting that Wells Fargo's wrongful conduct was its failure to disclose the endorsement, Mr. Rodger is returning to his claim that Wells Fargo did not inform him of the loan securitization. But again, Mr. Rodgers "lacks standing to raise these arguments as he is not a party to the securitization contracts." *Sanborn, Tr. for Brent D. Sanborn Tr. v. Newrez LLC*, No. C23-5542 BHS, 2023 WL 4052343, at *2 (W.D. Wash. June 16, 2023) (citing cases); *see Borowski v. BNC Mortg., Inc.*, No. C12-5867 RJB, 2013 WL 4522253, at *5 (W.D. Wash. Aug. 27, 2013) ("borrowers, as third parties to the assignment of their mortgage (and securitization process), cannot mount a challenge to the chain of assignments[.]").

To the extent Mr. Rodgers's claim can be construed as challenging the non-recourse endorsement outside the securitization process, he cannot plausibly plead that Wells Fargo's non-disclosure was a false representation. To assert a fraudulent concealment claim under Washington law, a plaintiff must show: "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *PCF Ins. Servs. of the W., LLC v. Fritts*, No. C23-1468-JCC, 2024 WL 1299954, at *2 (W.D. Wash. Mar. 27, 2024) (quoting *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012)).

Though Mr. Rodgers alleges that the version of the promissory note he signed did not contain the endorsement, it did expressly acknowledge, "I understand that the Lender may transfer this Note. . . . anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the '*Note Holder*.'" Dkt. 7-2 at 26. The terms of the note permitted Wells Fargo to transfer the note to a third party. *See id.* Accordingly, Mr. Rodgers has not plausibly pled that Wells Fargo's non-disclosure was a false representation. Because these defects could not be cured by the allegation of other facts, the fraudulent concealment claim is DISMISSED with prejudice.

### 2.    CPA Claim

Wells Fargo argues that Mr. Rodgers' CPA claim fails because allegations that it engaged in deceptive practices also "derive from the alleged assignment and securitization" of the mortgage loan. Dkt. 29 at 13. Wells Fargo points specifically to Mr. Rodgers' allegations that Wells Fargo (1) provided inconsistent or incomplete Note copies; (2) failed to disclose the non-recourse endorsement; (3) misrepresented the Note's funding and custodial status; and

(4) presented itself as a lender at origination while later disclaiming legal ownership or provided contradictory information about enforcement rights. *Id.* (citing Dkt. 7 ¶ 50). Wells Fargo contends that "Rodgers is not a party to any alleged assignment or securitization agreement . . . as such, the alleged 'deceptive practice' is not something 'of material importance.'" *Id.*

Mr. Rodgers responds that Wells Fargo's actions "misled Plaintiff about the Note's enforceability and Wells Fargo's creditor status." Dkt. 35 at 10. Mr. Rodgers again argues that the amended complaint "focuses on origination and servicing misrepresentations, not assignment or securitization" and that he "alleged concrete property injuries, including $57,264 in coerced payments to an unverified creditor . . ., $200 in mailing costs, and $1,950 in lost work time pursuing verification due to Wells Fargo's deceptions . . ., as well as emotional distress from financial uncertainty[.]" *Id.*

Though Mr. Rodgers asserts that the misleading actions are based on origination and servicing issues—not on the assignment of the note—his allegations all derive from the note transfer to Fannie Mae. *See* Dkt. 7 ¶ 50. For example, Mr. Rodgers' assertion that the Wells Fargo misrepresented the legal ownership of the note, and its custodial status are directly tied to the note's assignment to Fannie Mae. *See id.* Mr. Rodgers thus lacks standing to bring his CPA claim. *See Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1135 (W.D. Wash. 2013) ("For their CPA . . . claims, Plaintiffs have failed to allege facts that establish injury, and therefore Plaintiff[s] lack standing.").

To the extent Mr. Rodgers's complaint can be construed as alleging injury from the loan's origination or servicing, as Mr. Rodgers argues, he also fails to state a CPA claim. "To prevail on a CPA action, the plaintiff must prove an '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 782, 295

P.3d 1179 (2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d (1986)). "A causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff." *Hangman Ridge*, 105 Wn.2d at 793.

The securitization of Mr. Rodgers' loan "does not constitute an actionable unfair or deceptive act under the CPA." *Beck v. U.S. Bank Nat'l Ass'n*, No. C17-0882JLR, 2017 WL 6389330, at *8 (W.D. Wash. Dec. 14, 2017) (citation omitted). The note, which was signed by Mr. Rodgers, "expressly authorize[s] subsequent assignments without the borrower's consent and without waiving [his] obligations to make payments." *Cagle v. Abacus Mortg., Inc.*, No. 2:13-CV-02157-RSM, 2014 WL 4402136, at *4 (W.D. Wash. Sept. 5, 2014) (when the promissory note and Deed of Trust allows the assignment of the note, the plaintiff "consequently cannot show that her obligation to make payments on her mortgage has been extinguished by transfer of one of these instruments").

Moreover, Mr. Rodgers has not shown that he incurred any actionable injury to business or property caused by the securitization. *See Douglass v. Bank of Am. Corp.*, No. CV-12-0609-JLQ, 2013 WL 2245092, at *8 (E.D. Wash. May 21, 2013) ("Plaintiffs cannot assert a CPA injury based upon the failure of Defendants to 'prove' to them legitimate holders exist by showing them the original notes."). Payments made to keep the loan current cannot constitute injury because Mr. Rodgers has not plausibly pled that his mortgage loan was discharged, and "emotional distress, embarrassment, and inconvenience are not compensable injuries under the CPA[.]" *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn. 2d 820, 837, 355 P.3d 1100 (2015) (citation omitted). Since the defects in his claim cannot be cured by the allegation of other facts, the CPA claim is DISMISSED with prejudice.

3.    *TILA Claim*

TILA requires that for "each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable: [] [t]he identity of the creditor required to make disclosure." 15 U.S.C. § 1638(a)(1). "The term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).

Wells Fargo argues that the alleged violation of Section 1638(a)(1) arises from Mr. Rodgers' "apparent belief that he is entitled to further documentation" of the note assignment to Fannie Mae. Dkt. 29 at 11. Wells Fargo contends that its "obligation under TILA was to disclose the 'creditor'—that is, the person to whom the Loan was initially payable— which, according to Rodgers's own allegations, was Wells Fargo and was disclosed." *Id.* (citing Dkt. 7 ¶ 7).

Mr. Rodgers maintains that the "FAC alleges Wells Fargo misrepresented its creditor status by failing to disclose it did not extend credit, acting as an intermediary with an undisclosed non-recourse endorsement to itself." Dkt. 35 at 8. He further argues that "[d]espite naming Wells Fargo as payee . . . the omission of its intermediary role and funding details violated TILA's mandate to disclose the true creditor and transaction terms." *Id.* Mr. Rodgers reasserts that he suffered "concrete damages" which included "$57,264 in coerced payments to an unverified creditor . . ., $200 in mailing costs, $1,950 in lost work time pursuing verification . . ., and

emotion distress from uncertainty . . . caused by reliance on Wells Fargo's misleading disclosures." *Id.* at 9.

The Court agrees with Wells Fargo that Mr. Rodgers' TILA claim is premised on the assertion that Mr. Rodgers was entitled to information about the note transfer to Fannie Mae. *See* Dkt. 7 ¶ 45 ("Defendant's failure to disclose the absence of a valid, documented funding transaction or legal transfer of the Note constitutes a material omission under TILA."); *id.* ¶ 44 ("At the time of closing on June 8, 2020, Defendant was named as the lender and creditor in the closing documents and the Note . . . [but] Defendant later disclosed that it services the Note on behalf of Fannie Mae . . ., while failing to provide documentation establishing any legal transfer or delivery of the Note to Fannie Mae.").

But as the Court explained, *see supra* Sec.IV.A.1–2, Mr. Rodgers lacks standing to challenge the non-disclosure of the loan securitization because he was not party to that contract. Mr. Rodgers also does not plausibly allege that he was injured from Wells Fargo's "fail[ure] to provide documentation establishing any legal transfer or delivery of the Note to Fannie Mae." Dkt. 7 ¶ 44. Though he asserts that his injuries include "coerced payments to an unverified creditor," Mr. Rodgers does not explain how Wells Fargo's non-disclosure extinguished his obligations under the mortgage contract. Dkt. 35 at 8; *see Wilson v. Bank of Am., N.A.*, No. C12-1532JLR, 2013 WL 275018, at *4 (W.D. Wash. Jan. 24, 2013) (dismissing plaintiffs' TILA claim for lack of Article III standing because their "threadbare allegations of injury do not amount to injury-in fact.").

To the extent Mr. Rodgers's claims are construed as alleging that Wells Fargo failed to disclose the creditor at the loan's origination, he fails to state a claim. Under Section 1638(a)(1), Wells Fargo is required to disclose the identity of the creditor, which is defined in Section 1602(g) as the person who extends the loan and to whom the debt is initially payable. 15 U.S.C.

§ 1638(a)(1); 15 U.S.C. § 1602(g). But Mr. Rodgers concedes in his pleadings that Wells Fargo correctly identified itself as the creditor—the person who gave the mortgage loan and to whom the loan was initially payable—and met its statutory obligation. *See* Dkt. 7 ¶ 7 ("Defendant is identified as the original lender and Originator of the promissory note at issue[.]"); Dkt. 7-2 at 28 (promissory note identifying Loan Origination Organization as Wells Fargo Bank N.A.).

Mr. Rodgers has not pled an injury in fact required for Article III standing arising from nondisclosure of the loan's securitization. Nor has he stated a TILA claim based on the disclosures at the time the loan was made. Because the defects in the TILA claim cannot be cured by the allegation of other facts, it is DISMISSED with prejudice.

## B.    Mr. Rodgers fails to state a RESPA claim.

Section 2501(e) of RESPA "requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) (citing 12 U.S.C. § 2605(e)(1)(A), (e)(2)). A "qualified written request" ("QWR") is defined as a written correspondence that—

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

"RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano*, 704 F.3d at 666 (citation omitted). Still, "the third of those requirements—that the letter must request information relating to servicing—ensures that the statutory duty to respond

does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Id.* (emphasis in original).

"Servicing" under REPSA encompasses "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . ., and making the payments of principal and interest and such other payments[.]" 12 U.S.C. § 2605(i)(3). It "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano*, 704 F.3d 666–67. Since the statute "distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender," the Ninth Circuit held that "letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." *Id.* at 667.

Wells Fargo argues that Mr. Rodgers' inquiries in the letter are not QWRs because they concern the loan's validity rather than its servicing. Dkt. 29 at 10. Mr. Rodgers denies that his letters do not concern servicing and argues that under 12 C.F.R. § 1024.36(d)(i)(A), Wells Fargo was required to provide "the identity of the owner/creditor and chain-of-title documentation[.]" Dkt. 35 at 7. He argues that his letter dated February 20, 2025 requested such information but Wells Fargo failed to provide the responsive records. *Id.* As a result, Mr. Rodgers maintains that Wells Fargo's failure to provide the required servicing information caused him monetary losses and emotional distress. *Id.* at 8.

In reply, Wells Fargo contends that Mr. Rodgers "did not make such a request in his February 20, 2025 letter[.]" Dkt. 37 at 4. Wells Fargo argues that Mr. Rodgers made a series of broad requests and the closest he came to seeking "the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan" as required under 12 C.F.R.

§ 1024.36(d)(i)(A) was his request for a "complete chain of title." *Id.* at 5. Wells Fargo maintains that a request for a "complete chain of title" is "qualitatively different from identifying information." *Id.* And even if Mr. Rodger's request triggered the 10-day requirement to respond, Wells Fargo argues that the RESPA claim still fails because he has not alleged that he was injured by any delay. *Id.*

"[B]road requests for information and documentation are not QWRs." *St. Louis v. JPMorgan Chase Bank N.A.*, No. C12-614 MJP, 2012 WL 12846992, at *3 (W.D. Wash. June 11, 2012) (citation omitted). And "as this Court has repeatedly held, RESPA was not designed to enable borrowers to flood their servicers with requests for securitization documentation unmoored from the borrower's clear obligations with respect to the loan." *Emceetee LLC v. Nationstar Mortg. LLC*, No. C14-898 MJP, 2014 WL 4656237, at *3 (W.D. Wash. Sept. 17, 2014) (citation omitted).

Here, the February 20, 2025 letter requested the following information:

(1) "A complete chain of title for my loan, including any transfers or assignments"; (2) "Confirmation of whether my loan has been included in a Mortgage Backed Security (MBS) or other investment vehicle"; (3) "Clarification on whether my loan was pledged as collateral under this or similar programs"; (4) "A breakdown of how each payment has been applied to principal, interest, fees, and escrow"; (5) "Documentation on whether any funds from securitization, sale, or third-party payments have been credited to my balance"; (6) "If any proceeds have reduced my loan balance, a clear explanation of how they were applied"; (7) "Why my full loan balance of $163,467.99 is still being collected without adjustments for any lender compensation"; (8) "Whether any lender settlements, credit enhancements, or guarantees have impacted my loan balance."

Dkt. 7-2 at 2–3.

The March 15, 2025 letter requested similar information:

(1) "Explain the June 8, v. June 14, 2020 discrepancy"; (2) "Disclose funding source—Wells Fargo capital, warehouse line, Federal Reserve, or MBS investors"; (3) "Provide: Wire transfer Records and Funding Ledgers—disbursement to escrow/seller"; (4) "Provide: Warehouse Credit Line Records and MBS Trust

Funding Ledgers"; (5) "Provide: Pooling and Servicing Agreement"; (6) "Provide: MBS Prospectus"; (7) "List entities holding/servicing my Note"; (8) "Provide: Assignments of Mortgage/Notes—all transfers"; (9) "Provide: Servicing Agreements—current terms"; (10) "Disclose payments/credit enhancements applied to my balance"; (11) "Provide: Accounting Ledger—payments, offsets, obligations."

*Id.* at 9–10.

None of these requests relate to the "scheduled periodic payments of the borrower pursuant to the terms of any loan." 12 U.S.C. § 2605(i)(3). Rather, all the inquiries in the February 20 letter relate to the loan securitization's effect on Mr. Rodgers' "contractual relationship with the lender." *Medrano*, 704 F.3d at 667. Wells Fargo timely responded to his request on March 13, clarifying that it was servicing the loan but that the note had been transferred to Fannie Mae. Dkt. 7-2 at 41. It also enclosed documentation relating to the servicing of the loan, which included a copy of the promissory note, deed of trust, and Mr. Rodgers' payment history. *See id.* at 43–45.

The March 15 request largely mirrored the prior letter, but Wells Fargo provided a response to additional inquiries Mr. Rodgers raised. *See id.* at 50. Specifically, Wells Fargo clarified that his account was handled properly, and his loan was not subject to discharge. *Id.* Wells Fargo added that the discrepancy between the June 8, 2020 and June 14, 2020 was that the system reflected June 8 as the origination date because the note was executed that day. *Id.* at 50. But the funding date is the day the lender released the funds to the title or escrow company, which occurred on June 14. *Id.* Since Mr. Rodgers' remaining inquiries were not related to servicing and thus outside of Wells Fargo's RESPA obligations, it had no duty to respond.

With respect to Mr. Rodgers' argument that 12 C.F.R. § 1024.36(d)(i)(A) obligated Wells Fargo to provide a complete chain of title for his loan, the Court disagrees. *See* Dkt. 35 at 7. A request for a "complete chain of title . . ., including any transfer and assignment," Dkt. 7-2 at 2,

is a significantly broader inquiry than a request for the "identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan."[2] 12 C.F.R. § 1024.36(d)(i)(A). Additionally, a request for a complete chain of title does not qualify as an appropriate "servicing" inquiry. *Emceetee LLC*, 2014 WL 4656237, at *3 (plaintiff's "request for back-up documentation regarding the complete chain of custody for the note or mortgage does not relate to the 'servicing of the loan.'").

None of Mr. Rodgers' requests addressed servicing of the loan and he does not plausibly allege that Wells Fargo failed to respond under its RESPA duties. Since the addition of other facts cannot cure the defects, the RESPA claim is DISMISSED with prejudice.

## C.    Mr. Rodgers is not entitled to equitable accounting or declaratory relief.

"The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law." *Singh v. City of Oakland, Cal.*, 295 F. App'x 118, 121–22 (9th Cir. 2008) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)). Here, Mr. Rodgers does not allege that money damages are not an adequate remedy for the asserted violations, and his claim for equitable accounting is DISMISSED with prejudice on this basis. *See B-1208 Pine, LLC*, No. 24-10088, 2024 WL 4219137, at *4 (Bankr. W.D. Wash. Sept. 17, 2024) ("A party may bring suit for an equitable accounting only in the absence of an adequate remedy at law.") (citing *Dairy Queen*, 369 U.S. at 478).

"The Declaratory Judgment Act creates only a remedy, not a cause of action." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013). Thus, a "court cannot grant

---

[2] The Court notes that Wells Fargo's March 13, 2025 letter did provide the identity of the owner of the note, Fannie Mae, along with its address and contact information. *See* Dkt. 7-2 at 41.

declaratory relief in the absence of a substantive cause of action." *Id.* (citation omitted); *see also Umouyo v. Bank of Am., NA*, No. 2:22-CV-00704-JHC, 2023 WL 1433804, at *3 (W.D. Wash. Feb. 1, 2023) (denying the request for declaratory relief because the plaintiffs did not demonstrate a substantive legal basis for the Court to void the promissory note, deed of trust, or any other legal claim the defendant had in the property). For the reasons provided above, Mr. Rodgers has not provided a substantive cause of action to warrant declaratory relief, and the claim is DISMISSED with prejudice.

**D.     Mr. Rodgers's motion for leave to file a second amended complaint is denied.**

The Court DENIES Mr. Rodgers motion for leave to amend his complaint a second time (Dkt. 33). When assessing the propriety of leave to amend, courts consider five factors: bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). While pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," amendment will not be allowed if it would be futile. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

Here, amendment would be futile because Mr. Rodgers does not have standing to assert any claims arising from the securitization agreement. *See generally* Dkt. 33-2. Nor do the proposed amendments cure the deficiencies in the operative complaint but instead add three new claims—unjust enrichment, breach of fiduciary duty, and declaratory relief on holder status. *See id.* at 46–54. These claims also arise from the securitization of his mortgage loan and Mr. Rodgers raises arguments in support of those claims which have already been rejected by this Court. *See Corinthian Colls.*, 655 F.3d at 995 ("[D]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.") (citation modified); *cf. Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (granting leave to amend where court could "conceive of facts" that would render plaintiff's

claim viable). Mr. Rodgers has amended his complaint once and because further amendment

would be futile, his motion for leave to file a second amended complaint (Dkt. 33) is DENIED.

<h3 style="text-align:center">V.    CONCLUSION</h3>

For the reasons explained above, it is hereby ORDERED that:

- Wells Fargo's motion to dismiss (Dkt. 29) is GRANTED.

- To the extent Mr. Rodgers' claims arise from challenges to the securitization of his mortgage, they are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

- To the extent Mr. Rodgers' claims are construed as arising from Wells Fargo's actions outside the securitization process, they are DISMISSED with prejudice for failure to state a claim.

- Mr. Rodgers' motion for leave to file a second amended complaint (Dkt. 33) is DENIED.

- Wells Fargo's motion to stay (Dkt. 39) is DENIED as moot.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and

to any party appearing pro se at said party's last known address.

Dated this 8th day of August, 2025.

Tiffany M. Cartwright
United States District Judge